William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave., 15th Floor
New York, New York 10017
Phone: (212) 286-1425; Fax: (646) 688-3078
Email: wcrand@wcrand.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
PARCREST INTERNATIONAL LLC, formerly known as :    ECF
PARCREST ADVISORS LLC and                      :    22 Civ. _____
INDEPENDENT INVESTMENT BANKERS CORP.,     :
doing business as IIB CORP.,                         :
                                           :
               Plaintiffs,          :
                                           :    **COMPLAINT AND**
   -against-                                  :    **JURY DEMAND**
                                           :
REAL FOOD, SGPS, S.A.,                   :
                                           :
               Defendant.         :
------------------------------------------------------------------------X

## COMPLAINT

Plaintiffs, PARCREST INTERNATIONAL LLC, formerly known as PARCREST

ADVISORS LLC, and INDEPENDENT INVESTMENT BANKERS CORP. doing business as

IIB CORP. (together "PARCREST" or "Plaintiffs" or "Plaintiff"), by and through their

undersigned counsel, William C. Rand, Esq., for and as their Complaint against Defendant

REAL FOOD, SGPS, S.A. ("REAL FOOD" or "Defendant") alleges, as follows:

### PRELIMINARY STATEMENT

1.     Plaintiffs provided investment banking services to Defendant REAL FOOD under

a contract with REAL FOOD.

2.     Defendant entered into an equity transaction in July 2020 covered by the

contract's tail provisions and has failed and refused to pay the success fee of at least $2.0 million

owed to Plaintiffs associated with the transaction and has attempted to conceal the transaction

from Plaintiffs to avoid paying the fees.

3.      Defendant also has failed to pay the $12,500 due on or before March 1, 2020

under the contract.

4.      Plaintiffs by this complaint are seeking damages for Defendant REAL FOOD's

failure to pay the money it owes to Plaintiffs under the contract.

## PARTIES

5.      Plaintiff, Independent Investment Bankers Corp. dba IIB Corp ("IIB"), is a

Delaware corporation having its principal place of business in the State of Texas and is

registered as a securities broker dealer with the State of New York.

6.      Plaintiff, PARCREST INTERNATIONAL LLC, formerly known as PARCREST

ADVISORS LLC, is a New York limited liability Company whose principal office is located at

125 Park Avenue, 25th Floor, New York, N.Y. 10017

7.      Defendant, REAL FOOD, SGPS, S.A., is corporation incorporated in the country

of Portugal whose principal place of business is in Lisbon, Portugal.  REAL FOOD is in the

restaurant business and owns and operates multiple restaurant chains and serves as franchisor to

a network of franchisees, that use Real Food's brands.

8.      REAL FOOD at times does business under and/or is referred to by "H3", "h3", or

terms including "H3", such as "Group H3".

9.      António Araujo is and has been the Co-Founder and Co-Owner of REAL FOOD and

the President of the Board of Directors at all times since the Engagement Agreement was executed on

September 10, 2019.

10.     James Lee ("Lee") is associated with and supervised by IIB and performed

investment banking services under the Engagement Agreement.

11.     Francisco Lume ("Lume") is associated with and supervised by IIB and performed investment banking services under the Engagement Agreement.

## JURISDICTION AND VENUE

12.     Subject matter jurisdiction is proper under 28 U.S.C. § 1332(a) because this is a civil action between Plaintiffs, citizens of Texas and New York, and Defendant, a citizen of a foreign state, Portugal, and the value of the matter in controversy exceeds seventy-five thousand dollars ($75,000) exclusive of interest and costs.

13.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the negotiations of the contract which gives rise to this lawsuit and a substantial part of the work performed by Plaintiffs under the contract occurred in the Southern District of New York.  In addition, the contract provides for the jurisdiction of "a court of the state of New York."

## STATEMENT OF THE FACTS

14.     Plaintiffs entered into an engagement agreement with Defendant on September 10, 2019 (the "Engagement Agreement" or the "Agreement" or the "Contract" or "contract").  A copy of the Engagement Agreement is attached as Exhibit A.

15.     Plaintiffs by this complaint seek to recover fees due under the Engagement Agreement for investment banking services provided under the Agreement.

16.     Defendant REAL FOOD entered into the Engagement Agreement to hire Plaintiffs to provide investment banking services "in connection with an equity financing, debt financing, merger and/or acquisition (the "Transaction") in the context of the search for strategic alternatives for the Company."

17.     Plaintiffs were engaged to obtain assistance in finding investors to provide money in the form of debt or equity to finance REAL FOOD or to purchase all or part of REAL FOOD's business.

18.     Under the Engagement Agreement, REAL FOOD agreed that Plaintiffs during the term of the Engagement Agreement were to be REAL FOOD's exclusive provider of investment banking services, with the exception of HARMONYGOLOD, S.A. and FINPREUR, Lda. with respect to investment banking services in Portugal.

19.     Plaintiffs provided extensive investment banking services during the term of the Engagement Agreement, including, *inter alia*, performing an analysis of REAL FOOD, preparing an information package for potential investors, and soliciting, coordinating and evaluating indications of interest.

20.     Plaintiffs obtained a written indication of interest on January 22, 2020 from Alfacap LLC d/b/a Reciprocal Capital to buy $53 million of equity of REAL FOOD based on an equity valuation of REAL FOOD in the amount of $80 million.

21.     Plaintiffs also obtained a written indication of interest on January 22, 2020 from Metric Capital Partners LLP to finance REAL FOOD's largest franchisee's buy-out of a majority stake in REAL FOOD.

22.     Plaintiffs on or before January 31, 2020 had obtained an additional verbal indication of interest to buy equity in REAL FOOD from Hargett Hunter Capital Partners, Riverside, and Garnett Station Partners and had obtained a verbal indication of interest in providing acquisition financing from BlackRock.

23.     Plaintiffs on or before January 31, 2020 had contacted over 180 potential investors to seek indication of interest for an investment in REAL FOOD.

24.     Under the Engagement Agreement, Plaintiffs are entitled to a fee equal to

percentage of any Transaction entered into or consummated by the REAL FOOD as follows:

a.     *Success Fee.*  Upon the successful completion of the Transaction, IIB shall
be entitled to the following (the "*Success Fee*"):

1.     **Equity Transaction**: If the Company or any Affiliate enters into or
consummates an Equity Financing during the Term with any third party, or during
the Tail Period (as defined in Section 6 hereof), the Company shall pay to IIB a
cash placement fee equal to five percent (5%) of the gross proceeds committed or
received by the Company in the Equity Financing.   For purposes of this
Engagement Agreement, an "*Equity Financing*" is any transaction in which any
third party invests in or purchases capital stock, partnership interests, membership
interests, profits rights other equitable interests from Company, any of its Affiliates
or any shareholder of the Company.   An Equity Financing includes the sale or
issuance of any debt instrument convertible into equity or other securities of the
Company or an Affiliate ("*Convertible Debt*").   For purposes of this Engagement
Agreement, the term "*Affiliate*" means any company or entity controlled by,
controlling or under common control with the named company.

2.     **Debt Financing**: If the Company or any Affiliate consummates a
Debt Financing during the Term with any third party, or during the Tail Period, IIB
shall receive a cash placement fee equal to four percent (4%) of the gross proceeds
received by the Company or any Affiliate, or in the event of a revolving credit
facility, the maximum loan amount.   For purposes of this Engagement Agreement,
a "*Debt Financing*" is a financial loan made to the Company or any of its Affiliates
in the course of one or more installments.   A Debt Financing does not include the
issuance of Convertible Debt.

3.     **M&A Transaction**: If the Company enters into an M&A
Transaction during the Term with any third party, or during the Tail Period with a
Referred Party, then the Company shall pay to IIB a fee equal to five percent (5%)
of the total consideration. This fee is due and payable to IIB in cash or like kind
securities (pro-rata as received/paid) on the date the M&A Transaction is
consummated and the capital received.   For purposes of this Engagement
Agreement, "*Consideration*" shall mean the total value received by the Company
or "Target" in any M&A Transaction(s) and shall include (i) the aggregate value of
all cash, securities, property, the assumption (or forgiveness) of debt and any other
obligations, and any other forms of payment received or to be received, directly or
indirectly, or paid, by the Company/Target (or any of its subsidiaries), its
stockholders, or a third party, as the case may be; (ii) amounts received under the
terms of an "earn-out" provision, rights to receive periodic payments, licenses,
royalties, and all other rights that may be at any time transferred or contributed to,
or by, the Company/Target (or any of its subsidiaries), its affiliates or shareholders
in connection with an acquisition of, or by, the Company/Target or of the assets
thereof; (iii) the value of any assets employed in the ordinary course of the
Company's business and which are not sold as part of the transaction; and (iv)

amounts receivable or payable to any Company owner or officer under consulting agreements in lieu of purchase price, above-market employment contracts to the extent above market, all non-compete agreements or similar arrangements, and all contingent payments in connection with any transaction. An "*M&A Transaction*" includes (x) any sale, transfer or conveyance of substantially all of the assets of the Company, an Affiliate of the Company or any division of either, (y) any purchase of a business or any division thereof, (z) any merger, consolidation, strategic alliance, joint venture or other similar transaction.

4. **Minimum Fee**: The Success fee will be subject to a minimum fee of $500,000 (the "Minimum Fee").

5. **Maximum Fee**: The Success Fee will be subject to a maximum fee of two million USD ($2,000,000) excluding the incentive fee describing below.

6. **Incentive Fee**: At the Company's discretion, Parcrest Advisors will be eligible to an additional discretionary fee at the choice of the Company totaling an additional $500,000. This fee is in addition to the Success Fee and to be paid within 5 business days of the Success fee payment, should the Company choose to pay an Incentive fee.

7. **Carveout**: In case the Company consummates a Transaction with any of the investors/acquirors pre-identified and disclosed in Appendix A of this Engagement Agreement, the Success Fee will be as follows:

a. Equal to the Minimum Fee in case Parcrest's investors have presented a Letter-of-Interest or Term Sheet valuing the Company at €[70,000,000] Enterprise Value within 30 days of closing

b. Equal to Zero in case Parcrest's investors have not submitted such Letter-of-Interest or Term Sheet

Except as expressly stated otherwise herein, the Success Fee is due and payable immediately upon the closing of the Transaction and shall be dispersed directly to IIB simultaneously with the delivery of the proceeds of the Transaction to the Company.

See Exhibit A at Section 5.

25.     Under the Engagement Agreement, if a Transaction occurs with an investor listed on Appendix A of the Agreement, Plaintiffs are entitled to a Success Fee of at least $500k because Plaintiffs submitted an indication of interest at an equity valuation of more than 70 million Euros.

26.     The Engagement Agreement required REAL FOOD to pay Plaintiffs "a non-refundable retainer in the amount of $12,500 payable on the Effective Date and on the first day of each month thereafter."

27.     REAL FOOD sent an email on February 13, 2020 to Francisco Lume and James Lee indicating that it was by the email terminating the Engagement as of the end of February, 2020.

28.     A copy of the email is attached as Exhibit B.

29.     Defendant Real Food failed to pay the $12,500 due on March 1, 2020.

30.     The Engagement Agreement provided that it could not be terminated before the date 6 months after the full execution of the Agreement.

31.     Section 7 of the Engagement Agreement states:

7.     <u>Term of Retention and Tail Period</u>. This Engagement Agreement shall begin on the Effective Date and will continue until terminated by either party on five business days' written notice to the other; provided that the <u>Company may not unilaterally terminate this engagement letter and the Engagement prior to six (6) months from the date of execution of the present</u> (the "Term").

32.     Since the Engagement Agreement prevented termination prior to the date six months after its execution on September 10, 2019, the termination is deemed to have occurred on March 10, 2020.

33.     Accordingly, Defendant Real Food actually terminated the Engagement Agreement as of March 10, 2020.

34.     Since the termination occurred after March 1, 2020, REAL FOOD was obligated to pay $12,500 on or before March 1, 2020.

35.     REAL FOOD has not paid the $12,500 to Plaintiffs which was due to be paid on or before March 1, 2020.

36.     The Engagement Agreement provided for tail periods during which Plaintiffs were entitled to fees for Transactions that occurred after the termination of the Engagement Agreement.

37.     The tail provision of the Engagement Agreement states:

The maximum of thirty six (36) month period immediately following the Term shall be the "*Tail Period*."  Notwithstanding the foregoing, no expiration or termination of this Engagement Agreement shall affect IIB's right to receive, and the Company's obligation to pay, any Success Fee, warrant, reimbursement or other amount becoming due under this Engagement Agreement (as set forth in Section 4 or 5).

I.     If in the first twelve (12) months of the Tail Period, the Company enters into or consummates a Transaction with a person or entity or their Affiliate, who was introduced to the Company by IIB or the Representative (a "Referred Party"), or

II.    If in the first twelve (12) months of the Tail Period, the Company enters into or consummates a Transaction with any other party by leveraging work and offers received as part of a process, or

III.   If in the first thirty six (36) months of the Tail period, the Company enters into or consummates a Transaction with <u>the party that invested any capital in the contemplated transaction</u>, then the Company shall be obligated to pay a Success Fee as set forth in Sections 4 and 5 of this Agreement.

See Section 7 of the Engagement Agreement attached as Exh. A.

38.     During July 2020, Defendant REAL FOOD entered into a transaction with its largest franchisee, João Ventura, with a value of in excess of $40 million in which João Ventura became a controlling owner of REAL FOOD (the "Tail Transaction" or the "Transaction").

39.     Upon information and belief, the Transaction was valued in amount of at least $40 million.

40.     Defendant entered into the Transaction with João Ventura by leveraging the work of Plaintiffs, including its valuation analysis and Indication of Interest that valued REAL Foods at $80 million.

41.     Defendant REAL FOOD concealed from Plaintiffs that it entered into this Transaction.

42.     Defendant REAL FOOD sent an email on March 24, 2020 to Plaintiff PARCREST stating that there was not going to be any Transaction with any of its franchisees.

8

43.    Plaintiffs first learned of the Transaction from a news article dated May 9, 2022 in the main newspaper in Portugal which stated that the Franchisee had become a controlling owner of REAL FOOD in July 2020.

44.    The franchisee, who purchased a controlling ownership interest in REAL FOOD by the Tail Transaction, was not included on the carve out list of investors on Appendix A of the Engagement Agreement.

45.    Defendant REAL FOOD concealed the Tail Transaction from Plaintiffs to avoid paying the Success Fee owed to Plaintiffs as a result of the Transaction.

46.    Plaintiffs sent an invoice for the $12,500 fee and the $2,000,000 Tail Transaction fee on July 21, 2022.

47.    Defendant has failed and refused to pay the fees it owes Plaintiffs.

### FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

48.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

49.    Plaintiffs entered into the Engagement Agreement (the "Contract") with Defendant.

50.    Plaintiffs performed all their obligations under the Contract.

51.    Defendant by the Contract agreed to pay a monthly fee of $12,500 on the first day of each month during the term of the Contract.

52.    Defendant by the Contract agreed to pay percentage success fees for any transaction covered by the Contract, including a 5% percentage fee for any equity or M&A

transaction covered by the Contract, subject to a minimum of $500,000 and capped at $2,000,000.

53.     Defendant failed to pay the $12,500 fee due to be paid under the Contract on or before March 1, 2020.

54.     Defendant failed to pay the success fees due under the Contract.

55.     Defendant failed to pay the 5% success fee applicable to the Tail Transaction it entered into during July 2020 with João Ventura.

56.     Defendant entered into the Tail Transaction with João Ventura by leveraging the work of Plaintiffs.

57.     Defendant breached the contract by failing and refusing to pay to Plaintiffs the fees due under the Contract.

58.     Defendant breached the Contract by concealing from Plaintiffs the transactions for which a fee was due to be paid to Plaintiffs.

59.     As a result of Defendant's breach of the Contract, Plaintiff has been damaged by an amount to be determined at trial that is no less than $2,012,500.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)**

60.     Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

61.     Plaintiffs entered into the Contract with Defendant.

62.     Plaintiffs performed all their obligations under the Contract.

63.     Defendant agreed to pay fees if it entered into transactions covered by the Contract.

64.     Defendant under the Contract has an implied obligation to Plaintiffs of good faith and fair dealing.

65.     Defendant under the contract had an implied obligation to report any transactions entered into by Defendant during the term of the contract and its tail period under which fees were obligated to be paid to Plaintiffs.

66.     Defendant breached its implied obligation of good faith and fair dealing by, *inter alia*, (a) concealing its transactions governed by the Contract to avoid paying fees to the Plaintiffs and (b) refusing to provide information to the Plaintiffs about transactions governed by the Contract.

67.     As a result of Defendant's breach of the Contract, Plaintiff has been damaged by an amount to be determined at trial that is no less than $2,012,500.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, respectfully requests that this Court grant the following relief:

(a)  An award of damages equal or greater than $2,012,500;

(b)  An award of pre-judgment and post-judgment interest;

(c)  An award of costs and expenses of this action together with reasonable attorney's and expert fees; and

(d)  Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated:  New York, New York
        October 3, 2022

LAW OFFICE OF WILLIAM COUDERT RAND

_____

William Coudert Rand, Esq.
501 Fifth Avenue 15th Floor
New York, New York 10017
Tel: (212) 286-1425
Fax: (646) 688-3078
Email: wcrand@wcrand.com
*Attorney for Plaintiffs*
PARCREST INTERNATIONAL LLC, formerly known as
PARCREST ADVISORS LLC, and INDEPENDENT
INVESTMENT BANKERS CORP. doing business as IIB
CORP.

William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave., 15th Floor
New York, New York 10017
Phone: (212) 286-1425; Fax: (646) 688-3078
Email: wcrand@wcrand.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

| | |
|---|---|
| PARCREST INTERNATIONAL LLC, formerly known as : | ECF |
| PARCREST ADVISORS LLC and : | 22 Civ. _____ |
| INDEPENDENT INVESTMENT BANKERS CORP., : | |
| doing business as IIB CORP., : | |
| : | |
| Plaintiffs, : | |
| : | **COMPLAINT AND** |
| -against- : | **JURY DEMAND** |
| : | |
| REAL FOOD, SGPS, S.A., : | |
| : | |
| Defendant. : | |

---------------------------------------------------------------------X

# EXHIBIT A

# ENGAGEMENT AGREEMENT

Dated: New York, New York
        October 3, 2022

LAW OFFICE OF WILLIAM COUDERT RAND
William Coudert Rand, Esq.
*Attorney for Plaintiff*s
501 Fifth Avenue 15th Floor
New York, New York 10017
Tel: (212) 286-1425
Fax: (646) 688-3078
Email: wcrand@wcrand.com

PARCREST ADVISORS

Parcrest Advisors
125 Park Avenue, 25th Floor
New York, NY 10017
www.parcrest.com

Sent via email

September 1, 2019

António Araújo
Co-Founder and Co-Owner
Real Food, SGPS, S.A.
Rua Tierno Galvan, Torre 3, N.º 10 - 3.º Piso
1070-274 Lisbon
Portugal

Dear Mr. Araújo,

This "Engagement Agreement" confirms our complete understanding with respect to the retention of Independent Investment Bankers, Corp. dba IIB Corp. in Texas ("IIB") as financial advisor to Real Food, SGPS, S.A. (the "Company") and James Lee and Francisco Lume (the "*Representatives*") of Parcrest Advisors LLC ("Parcrest") in connection with an equity financing, debt financing, merger and/or acquisition (each a "*Transaction*") in the context of the search for strategic alternatives for the Company.

It is understood that at least one objective of this Engagement Agreement is a capital raise, whether to obtain equity financing and/or debt financing, and such capital raise is on a *"Best Efforts" basis*. IIB makes no representation or promise as to whether its efforts will be successful. Consequently, the Company should not place any reliance whatsoever that this *"Best Efforts"* capital raise will actually succeed.

Upon the terms and subject to the conditions set forth hereinafter, the parties hereto agree as follows:

1. Appointment. The Company hereby retains IIB through certain individuals who are registered and licensed as investment bankers with FINRA (the "*Representatives*") associated with Parcrest Advisors LLC ("Parcrest" or "Parcrest Advisors") and supervised by IIB. IIB and the Representatives hereby agree to act as the Company's exclusive placement agent and financial advisor granted that Parcrest acknowledges the involvement of HARMONYGOLD, S.A. and FINPREUR, Lda. (with respect to Investment Banking services in Portugal) in connection with the Transaction and the financial advisory services more specifically set forth in Section 2 below, effective as of the date this Engagement Agreement is executed and delivered by all parties hereto (the "*Effective Date*"). Nothing in this Engagement Agreement shall be construed so as to (i) obligate the Company to complete the Transaction or any transaction or (ii) entitle IIB to any fees or other compensation with respect to potential investors with whom the Company declines, in its sole and absolute discretion, to pursue the Transaction.

2. Exclusivity. The Company hereby grants to IIB, during the Term, the exclusive right to provide the services described in this Engagement Agreement to the Company during the Term with the exception of the involvement of HARMONYGOLD, S.A. and FINPREUR, Lda. with respect to Investment Banking services in Portugal. The Company represents and warrants that, except for IIB, it has not, nor will it, employ or agree to compensate any other person or entity with regard to the services to be provided by IIB, or customarily provided by an investment banker or financial advisors during the

*Investment Banking Services and Securities offered through Independent Investment Bankers Corp. a broker-dealer, Member FINRA/SIPC.*
*Parcrest Advisors LLC is not affiliated with Independent Investment Bankers Corp.*
*125 Park Avenue, 25th Floor, New York, NY 10017*

Page 1

**PARCREST** ADVISORS

Parcrest Advisors
125 Park Avenue, 25th Floor
New York, NY 10017
www.parcrest.com

Term and in connection with a Transaction with the exception of HARMONYGOLD, S.A. and FINPREUR, Lda.

3.      Scope and Certain Conditions of Services.  The Company hereby retains IIB and the Representatives as its exclusive investment banker to consult with and advise the Company with respect to the Transaction.  The Company expressly acknowledges and agrees that the obligations of IIB and the Representatives hereunder with respect to the Transaction are on a reasonable best efforts basis only and that the execution of this Engagement Agreement does not constitute a commitment by IIB and the Representatives to provide financing to the Company and does not ensure the success of securing any financing on behalf of the Company.  IIB and the Representatives' services will include, if appropriate or if reasonably requested by the Company: (a) reviewing the Company's financial condition, operations, competitive environment, prospects and related matters for potential investors; (b) preparing the information package or confidential information memorandum; (c) soliciting, coordinating and evaluating indications of interest and proposals regarding a Transaction; (d) advising the Company as to the structure of a Transaction; and (e) providing such other financial advisory and investment banking services reasonably necessary to accomplish the foregoing.  The Company understands and agrees that neither IIB nor Representative is providing or will provide accounting, tax or legal advice or counsel in connection with a Transaction, as part of their services to the Company and that the Company shall seek such services from its own CPA, lawyer and tax professional.  With respect to any financing, Company acknowledges that it has consulted, or will consult, with its own legal counsel regarding the need for making filings pursuant to the United States Securities Acts and applicable state securities laws. Company agrees not to file any Form D that includes the name of IIB or of any of its affiliates without prior written consent from IIB management.

4.      Representatives are registered, licensed, and supervised by IIB, a registered broker/dealer and member of FINRA/SIPC.  All securities contemplated herein will be offered through IIB. Parcrest is not an affiliate of IIB.  Required supervision by IIB of registered investment bankers includes, among other things, approval of executed engagement agreements and due diligence oversight.

5.      Fees and Compensation.  In consideration for the services rendered hereunder, the Company agrees to pay the following fee and other compensation:

a.      *Success Fee.*  Upon the successful completion of the Transaction, IIB shall be entitled to the following (the "*Success Fee*"):

1.      **Equity Transaction**: If the Company or any Affiliate enters into or consummates an Equity Financing during the Term with any third party, or during the Tail Period (as defined in Section 6 hereof), the Company shall pay to IIB a cash placement fee equal to five percent (5%) of the gross proceeds committed or received by the Company in the Equity Financing.  For purposes of this Engagement Agreement, an "*Equity Financing*" is any transaction in which any third party invests in or purchases capital stock, partnership interests, membership interests, profits rights other equitable interests from Company, any of its Affiliates or any shareholder of the Company.   An Equity Financing includes the sale or issuance of any debt instrument convertible into equity or other securities of the Company or an Affiliate ("*Convertible Debt*").   For purposes of this Engagement Agreement, the term "*Affiliate*" means any company or entity controlled by, controlling or under common control with the named company.

*Investment Banking Services and Securities offered through Independent Investment Bankers Corp. a broker-dealer, Member FINRA/SIPC.*
*Parcrest Advisors LLC is not affiliated with Independent Investment Bankers Corp.*
*125 Park Avenue, 25th Floor, New York, NY 10017*

Page 2

**PARCREST** ADVISORS

Parcrest Advisors
125 Park Avenue, 25th Floor
New York, NY 10017
www.parcrest.com

2. **Debt Financing**: If the Company or any Affiliate consummates a Debt Financing during the Term with any third party, or during the Tail Period, IIB shall receive a cash placement fee equal to four percent (4%) of the gross proceeds received by the Company or any Affiliate, or in the event of a revolving credit facility, the maximum loan amount. For purposes of this Engagement Agreement, a "_Debt Financing_" is a financial loan made to the Company or any of its Affiliates in the course of one or more installments. A Debt Financing does not include the issuance of Convertible Debt.

3. **M&A Transaction**: If the Company enters into an M&A Transaction during the Term with any third party, or during the Tail Period with a Referred Party, then the Company shall pay to IIB a fee equal to five percent (5%) of the total consideration. This fee is due and payable to IIB in cash or like kind securities (pro-rata as received/paid) on the date the M&A Transaction is consummated and the capital received. For purposes of this Engagement Agreement, "_Consideration_" shall mean the total value received by the Company or "Target" in any M&A Transaction(s) and shall include (i) the aggregate value of all cash, securities, property, the assumption (or forgiveness) of debt and any other obligations, and any other forms of payment received or to be received, directly or indirectly, or paid, by the Company/Target (or any of its subsidiaries), its stockholders, or a third party, as the case may be; (ii) amounts received under the terms of an "earn-out" provision, rights to receive periodic payments, licenses, royalties, and all other rights that may be at any time transferred or contributed to, or by, the Company/Target (or any of its subsidiaries), its affiliates or shareholders in connection with an acquisition of, or by, the Company/Target or of the assets thereof; (iii) the value of any assets employed in the ordinary course of the Company's business and which are not sold as part of the transaction; and (iv) amounts receivable or payable to any Company owner or officer under consulting agreements in lieu of purchase price, above-market employment contracts to the extent above market, all non-compete agreements or similar arrangements, and all contingent payments in connection with any transaction. An "_M&A Transaction_" includes (x) any sale, transfer or conveyance of substantially all of the assets of the Company, an Affiliate of the Company or any division of either, (y) any purchase of a business or any division thereof, (z) any merger, consolidation, strategic alliance, joint venture or other similar transaction.

4. **Minimum Fee**: The Success fee will be subject to a minimum fee of $500,000 (the "Minimum Fee").

5. **Maximum Fee**: The Success Fee will be subject to a maximum fee of two million USD ($2,000,000) excluding the incentive fee describing below.

6. **Incentive Fee**: At the Company's discretion, Parcrest Advisors will be eligible to an additional discretionary fee at the choice of the Company totaling an additional $500,000. This fee is in addition to the Success Fee and to be paid within 5 business days of the Success fee payment, should the Company choose to pay an Incentive fee.

7. **Carveout**: In case the Company consummates a Transaction with any of the investors/acquirors pre-identified and disclosed in Appendix A of this Engagement Agreement, the Success Fee will be as follows:

_Investment Banking Services and Securities offered through Independent Investment Bankers Corp. a broker-dealer, Member FINRA/SIPC. Parcrest Advisors LLC is not affiliated with Independent Investment Bankers Corp. 125 Park Avenue, 25th Floor, New York, NY 10017_

Page 3

a.  Equal to the Minimum Fee in case Parcrest's investors have presented a Letter-of-Interest or Term Sheet valuing the Company at €[70,000,000] Enterprise Value within 30 days of closing

b.  Equal to Zero in case Parcrest's investors have not submitted such Letter-of-Interest or Term Sheet

Except as expressly stated otherwise herein, the Success Fee is due and payable immediately upon the closing of the Transaction and shall be dispersed directly to IIB simultaneously with the delivery of the proceeds of the Transaction to the Company.

*b.*    *Retainer*.  The Company shall pay IIB a non-refundable retainer in the amount of $12,500, payable and earned on the <u>Effective Date and on the first day of each month thereafter</u> through the term of this engagement.

*c.*    *Expense Reimbursement*.  The Company agrees to reimburse IIB for all out-of-pocket expenses incurred by the Representatives, Parcrest or IIB in connection with the Engagement Agreement and subject to a total cap of $10,000. The cap can be revised if agreed by both sides in written form. In addition, Representatives, Parcrest or IIB will require written approval by the Company for any single expense in excess of $1,000.

6.    <u>Payment Instructions</u>.  All Success Fees, expense reimbursements, retainer and other payments made by the Company pursuant to this Engagement Agreement shall be made directly to IIB. All payments shall be made by wire or check pursuant to the instructions below:

Independent Investment Bankers, Corp.
2900 N. Quinlan Park Rd.
Suite #240-235
Austin, TX 78732
Attn: Dante Fichera
T (512) 266-3000

Wire Instructions:

Independent Investment Bankers Corp.
ROUTING      111000614
ACCT#        138228150
Chase Bank
5145 Ranch Rd. 620 N, Building K
Austin, TX 78732

* Please note the Company's name and provide relevant detail on the check or wire

IIB, pursuant to separate agreements, may retain or allocate any or all of the fees or other amounts payable under this Engagement Agreement among the Representatives or their assigns. This Engagement Agreement shall not be terminated by virtue of any change in employment of the Representatives or a termination of the Representatives' supervision by IIB; and in such event, IIB shall remain entitled to receive the fees hereunder and may adjust allocations among the Representatives and others to account for relative efforts and success in regard to a Transaction.

*Investment Banking Services and Securities offered through Independent Investment Bankers Corp. a broker-dealer, Member FINRA/SIPC.*
*Parcrest Advisors LLC is not affiliated with Independent Investment Bankers Corp.*
*125 Park Avenue, 25th Floor, New York, NY 10017*

Page 4

7.    <u>Term of Retention and Tail Period</u>. This Engagement Agreement shall begin on the Effective Date and will continue until terminated by either party on five business days' written notice to the other; provided that the <u>Company may not unilaterally terminate this engagement letter and the Engagement prior to six (6) months from the date of execution of the present</u> (the "Term").

Upon termination, the rights and obligations of the parties hereunder shall terminate, except the following which shall survive any termination and remain in full force and effect:

a.    accrued rights and liabilities, including for any fees earned and expenses incurred by Parcrest and IIB at the date of termination; and

b.    the termination/survival, conflicts of interest, confidentiality, indemnity/liability and limitation of liability of third parties provisions of this engagement letter.

The maximum of thirty six (36) month period immediately following the Term shall be the "*Tail Period*." Notwithstanding the foregoing, no expiration or termination of this Engagement Agreement shall affect IIB's right to receive, and the Company's obligation to pay, any Success Fee, warrant, reimbursement or other amount becoming due under this Engagement Agreement (as set forth in Section 4 or 5).

I.    If in the first twelve (12) months of the Tail Period, the Company enters into or consummates a Transaction with a person or entity or their Affiliate, who was introduced to the Company by IIB or the Representative (a "Referred Party"), or

II.    If in the first twelve (12) months of the Tail Period, the Company enters into or consummates a Transaction with any other party by leveraging work and offers received as part of a process, or

III.    If in the first thirty six (36) months of the Tail period, the Company enters into or consummates a Transaction with <u>the party that invested any capital in the contemplated transaction,</u>

then the Company shall be obligated to pay a Success Fee as set forth in Sections 4 and 5 of this Agreement.

8.    <u>Non-Circumvention</u>.   Each Referred Party shall be considered, for purposes of this Engagement Agreement, the property of IIB.   The Company on behalf of itself, its parent or its subsidiaries agree not to circumvent, directly or indirectly, IIB's relationship with any Referred Parties and the Company will not directly or indirectly contact or negotiate with any Referred Party regarding a Transaction with the Company, or with any other company, and will not enter into any agreement or transaction with a Referred Party, or disclose the names of Referred Parties, except as such disclosure may be required by any law, rule, regulation, regulatory body, court or administrative agency, during the Term and the Tail Period without the prior written approval of IIB, Parcrest and the Representatives.  In the event that the Company enters into a Transaction (a "*Subsequent Transaction*") with a Referred Party during the Term or Tail Period (regardless of whether such placement is arranged without an agent or through an agent other than IIB), the Company shall be obligated to pay a Success Fee as set forth in this Engagement Agreement.

9.    <u>Due Diligence</u>. The Company agrees to furnish the Representatives and IIB with such information regarding the business and financial condition of the Company as is reasonably requested, all

*Investment Banking Services and Securities offered through Independent Investment Bankers Corp. a broker-dealer, Member FINRA/SIPC.*
*Parcrest Advisors LLC is not affiliated with Independent Investment Bankers Corp.*
*125 Park Avenue, 25th Floor, New York, NY 10017*

Page 5

PARCREST ADVISORS

Parcrest Advisors
125 Park Avenue, 25th Floor
New York, NY 10017
www.parcrest.com

of which will be, to the Company's best knowledge, after due inquiry, accurate and complete at the time furnished.  The Company will promptly notify the Representatives and IIB if it learns of any material misstatement in, or material omission from, any information previously delivered to the Representatives or IIB.  The Representatives and IIB will conduct independent due diligence on the Company and may terminate this Engagement Agreement should its due diligence findings not be reasonably consistent with the representations (oral and written) made by the Company.

10.    <u>Public Announcements</u>. Upon the consummation of any Transaction, IIB may, at its own expense, place announcements on its corporate website and in financial and other newspaper and periodicals (such as a customary "tombstone" advertisement, including the logo or other identifying marks) describing its services in connection therewith.

11.    <u>Confidentiality</u>.  Parcrest, the Representatives and IIB shall keep all information obtained from the Company strictly confidential except: (a) for information which is otherwise publicly available, or previously known to Parcrest, the Representatives or IIB or was obtained by Parcrest, the Representatives or IIB independently of the Company and without breach of Parcrest's, the respective Representatives' or IIB's agreements with the Company; (b) Parcrest, the Representatives or IIB may disclose such information to its affiliates, shareholders, officers, directors, representatives, agents, employees, regulatory administrators and attorneys, and to financial institutions, but shall ensure, to the best of its ability, that all such persons will keep such information strictly confidential; (c) pursuant to any order of a court of competent jurisdiction or other governmental or quasi-governmental body (Parcrest, the Representatives or IIB, as the case may be, will give written notice to the Company of such order within forty-eight (48) hours of receipt of such order); and (d) upon prior written consent of the Company. Notwithstanding the foregoing, the IIB and the Representative shall use the disclose Company confidential information to the extent necessary or desirable to perform its services to the Company as set forth herein.   The Company agrees that any report or opinion, oral or written, delivered to it by Parcrest, the Representatives or IIB is prepared solely for its confidential use and shall not be reproduced, summarized, or referred to in any public document or given or otherwise divulged to any other person, other than its employees, attorneys and prospective investors that the Representatives or IIB have introduced to the Company, without the prior written consent of IIB and, if the same was prepared and delivered by Parcrest, the prior written consent of Parcrest, except disclosure by the Company as may be required by applicable law or regulation, in which event IIB's and, if applicable, Parcrest's consent shall not be unreasonably withheld or delayed.

12.    <u>Other Engagements</u>. The Company acknowledges that IIB, the Representatives and Parcrest and its respective affiliates may have, and may continue to have, investment banking or other relationships with persons and entities other than the Company, about or from which the representatives, Parcrest and IIB may acquire information of interest to the Company. The Representatives, Parcrest and IIB shall have no obligation to disclose such information to the Company or to use such information in connection with this Engagement Agreement.

13.    <u>Indemnification</u>.  The Company agrees to indemnify, defend and hold harmless IIB and IIB Representatives, and their respective Affiliates, and each of their respective officers, directors, managers, owners, employees, and agents (each, an "<u>*Indemnified Party*</u>"), against any and all loss, charge, claim, damage, expense and liability whatsoever, including, but not limited to, all attorneys' fees and expenses (hereinafter a "<u>*Claim*</u>" or "<u>*Claims*</u>"), related to or arising in any manner out of, based upon, in connection with or contemplated by this Engagement Agreement.   Each party further agrees that it will not, without the prior written consent of each Indemnified Party, settle, compromise or consent to the

*Investment Banking Services and Securities offered through Independent Investment Bankers Corp. a broker-dealer, Member FINRA/SIPC.*
*Parcrest Advisors LLC is not affiliated with Independent Investment Bankers Corp.*
*125 Park Avenue, 25th Floor, New York, NY 10017*

Page 6

entry of any judgment in any pending or threatened proceeding in respect of which indemnification may be sought hereunder (whether or not any Indemnified Party is an actual or potential party), unless such settlement, compromise or consent (i) includes an unconditional release of each Indemnified Party from all liability arising out of such pending or threatened proceeding and (ii) does not contain any factual or legal admission by or with respect to any Indemnified Party or any adverse statement with respect to the character, professionalism, expertise or reputation of any Indemnified Party or any action or inaction of any Indemnified Party.  The indemnity obligations of the Indemnifying Party set forth herein shall be in addition to any liability which the Indemnifying Party may otherwise have and shall be binding upon any successors, assigns, heirs and personal representatives of the Indemnifying Party and inure to the benefit of any successors, assigns, heirs and personal representatives of an Indemnified Party.   The indemnity provisions set forth herein shall survive any termination or expiration of this Agreement.

14.     Warranty Disclaimer; Limitation of Liability.   THE EXPRESS WARRANTIES PROVIDED BY IIB AND REPRESENTATIVE IN THIS ENGAGEMENT AGREEMENT SHALL BE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NONINFRINGEMENT.   IIB'S AND REPRESENTATIVE'S MAXIMUM LIABILITY TO THE COMPANY, ITS STOCKHOLDERS OR ANY OTHER PERSON OR ENTITY ARISING FOR ANY REASON RELATING TO IIB AND REPRESENTATIVE'S PERFORMANCE OF THE SERVICES CONTEMPLATED HEREBY SHALL BE LIMITED TO THE AMOUNT OF FEES PAID TO IIB FOR THE PERFORMANCE OF SUCH SERVICES.

NEITHER PARTY SHALL HAVE ANY LIABILITY TO THE OTHER PARTY FOR ANY LOST PROFITS OR SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE COMPANY AGREES THAT IT WILL CONDUCT ITS OWN DUE DILIGENCE INVESTIGATION AND ANALYSIS OF ANY OFFER AND SHALL BE SOLELY RESPONSIBLE FOR ITS OWN INVESTMENT DECISION.   NEITHER IIB NOR REPRESENTATIVE HAS INDEPENDENTLY VERIFIED ANY INFORMATION REGARDING ANY POTENTIAL ACQUIROR, MAKES NO REPRESENTATION OR WARRANTY AS TO THE ACCURACY OR COMPLETENESS OF ANY INFORMATION AND SHALL HAVE NO LIABILITY FOR ANY REPRESENTATIONS (EXPRESSED OR IMPLIED) CONTAINED IN, OR FOR ANY OMISSIONS FROM, ANY INFORMATION TRANSMITTED TO THE COMPANY IN THE COURSE OF ITS EVALUATION OF THE ANY OFFER.

THE PROVISIONS OF THIS SECTION 14 STATES IIB'S AND REPRESENTATIVE'S ENTIRE LIABILITY AND THE COMPANY'S SOLE AND EXCLUSIVE REMEDY WITH RESPECT TO ANY CLAIM UNDER THIS ENGAGEMENT AGREEMENT.   THE COMPANY ACKNOWLEDGES AND AGREES THAT IIB AND REPRESENTATIVE DO NOT GUARANTY THE SERVICES IN ANY RESPECT NOR HAS IIB OR REPRESENTATIVE GUARANTEED THE CONSUMMATION OR ANY OTHER ASPECT OF ANY TRANSACTION.

15.     Authority.  By signing this Engagement Agreement, each signing party represents that its representative or representatives signing this Engagement Agreement have unconditional authority to enter into this Engagement Agreement on behalf of the party.

16.     Entire Agreement.     This Engagement Agreement contains the entire understanding between the parties relating to the subject matter of this Engagement Agreement.   All prior or

*Investment Banking Services and Securities offered through Independent Investment Bankers Corp. a broker-dealer, Member FINRA/SIPC.*
*Parcrest Advisors LLC is not affiliated with Independent Investment Bankers Corp.*
*125 Park Avenue, 25th Floor, New York, NY 10017*

Page 7

PARCREST ADVISORS

Parcrest Advisors
125 Park Avenue, 25th Floor
New York, NY 10017
www.parcrest.com

contemporaneous agreements, understandings, representations and statements, whether direct or indirect, oral or written, are merged into and superseded by this Engagement Agreement and shall be of no further force or effect.  This Engagement Agreement shall be binding upon, and shall inure to the benefit of, the parties and their respective successors and assigns.  This is a fully integrated Engagement Agreement. Each party represents, warrants, agrees and admits that it has not entered into this Engagement Agreement in reliance upon any promise or representation not expressly set forth in this Engagement Agreement. Any amendment to this Engagement Agreement must be in writing signed by duly authorized representatives of the parties hereto and stating the intent of the parties to amend this Engagement Agreement.

17.    Severability / Compliance.  The invalidity or unenforceability of any provision of this Engagement Agreement shall not affect the validity or enforceability of any other provision of this Engagement Agreement, which shall remain in full force and effect in accordance with the terms hereof. The Company agrees that it will be solely responsible for ensuring that the Transaction or any transaction complies with applicable law.

18.    Attorneys' Fees.  In any litigation, arbitration or other proceeding by which one party either seeks to enforce its rights under this Engagement Agreement or seeks a declaration of any rights or obligations under this Engagement Agreement, the prevailing party shall be awarded reasonable attorneys' fees, together with any costs and expenses, including expert witness fees, to resolve the dispute and to enforce the final judgment.

19.    Jurisdiction.  Each party hereby irrevocably (a) agrees that any suit or other legal proceeding arising out of or relating to this Engagement Agreement may be brought only in a court of the State of New York (b) consents, for itself and in respect of its property, to the jurisdiction of each such court in any such suit or proceeding, and (c) waives any objection that it may have to the laying of venue of any such suit or proceeding in any of such courts and any claim that any such suit or proceeding has been brought in an inconvenient forum.  This Engagement Agreement shall be governed by the laws of the state of New York, without regard to such state's rules concerning conflict of laws.

20.    Multiple Counterparts.  This Engagement Agreement may be executed in multiple counterparts, each of which for all purposes is to be deemed an original, and all of which constitute, collectively, one agreement.

21.    Security Interest; Closing Fees.  The Company hereby grants IIB a security interest in the proceeds from each Transaction to secure the payment of IIBs' Success Fee and other sums due under this Engagement Agreement.  The Company hereby authorizes and instructs any person or entity who may be handling the closing of a Transaction to pay and disburse out of the Transaction proceeds directly to IIB, the amounts due IIB under the terms of this Engagement Agreement.

22.    Survival.  Sections Sections 5, 6, 7, 8, 13 through this Section 21 shall survive the expiration or termination of this Engagement Agreement.

*Investment Banking Services and Securities offered through Independent Investment Bankers Corp. a broker-dealer, Member FINRA/SIPC.
Parcrest Advisors LLC is not affiliated with Independent Investment Bankers Corp.
125 Park Avenue, 25th Floor, New York, NY 10017*

Page 8

**PARCREST** ADVISORS

Parcrest Advisors
125 Park Avenue, 25th Floor
New York, NY 10017
www.parcrest.com

Please confirm that the foregoing terms are in accordance with your understanding by signing and returning the enclosed duplicate original of this Engagement Agreement.


REAL FOOD, SGPS, S.A.


Signature:      _____

Name:          _____

Title:           _____

Date:           _____


INDEPENDENT INVESTMENT BANKERS, CORP.


Signature:      _____

Name:          Dante Fichera

Title:           President

Date:           _____


PARCREST ADVISORS,
On behalf of the Representatives


Signature:      _____

Name:          James C. Lee

Title:           Managing Partner

Date:           _____


Signature:      _____

Name:          Francisco Lume

Title:           Managing Director

Date:           _____


*Investment Banking Services and Securities offered through Independent Investment Bankers Corp. a broker-dealer, Member FINRA/SIPC.*
*Parcrest Advisors LLC is not affiliated with Independent Investment Bankers Corp.*
*125 Park Avenue, 25th Floor, New York, NY 10017*

**PARCREST** ADVISORS

Parcrest Advisors
125 Park Avenue, 25th Floor
New York, NY 10017
www.parcrest.com

Please confirm that the foregoing terms are in accordance with your understanding by signing and returning the enclosed duplicate original of this Engagement Agreement.

**REAL FOOD, SGPS, S.A.**

Signature:

Name:      ANTONIO CUNHA ARAUJO

Title:     PRESIDENTE CONSELHO ADMINISTRAÇAO

Date:      9 Setembro 2019

**INDEPENDENT INVESTMENT BANKERS, CORP.**

Signature:

Name:      Dante Fichera

Title:     President

Date:      September 10, 2019

**PARCREST ADVISORS,**
On behalf of the Representatives

Signature:

Name:      James C. Lee

Title:     Managing Partner

Date:      9/9/2019

Signature:

Name:      Francisco Lume

Title:     Managing Director

Date:      9/9/2019

*Investment Banking Services and Securities offered through Independent Investment Bankers Corp. a broker-dealer, Member FINRA/SIPC.
Parcrest Advisors LLC is not affiliated with Independent Investment Bankers Corp.
125 Park Avenue, 25th Floor, New York, NY 10017*

**PARCREST** ADVISORS

Parcrest Advisors
125 Park Avenue, 25th Floor
New York, NY 10017
www.parcrest.com

APPENDIX A (List of Carveout Investors)

1. Altamar Capital
2. Anacap Financial Partners
3. Artá Capital
4. Atena Equity Partners
5. Capital Criativo
6. ECS Capital
7. Explorer Investments
8. Inter-Risco
9. Magnum Capital Partners
10. Oxy Capital
11. Portobello Capital
12. ProA Capital
13. Springwater Capital
14. Ibersol SGPS S.A.
15. Grupo Portugalia

*Investment Banking Services and Securities offered through Independent Investment Bankers Corp. a broker-dealer, Member FINRA/SIPC.*
*Parcrest Advisors LLC is not affiliated with Independent Investment Bankers Corp.*
*125 Park Avenue, 25th Floor, New York, NY 10017*

William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave., 15th Floor
New York, New York 10017
Phone: (212) 286-1425; Fax: (646) 688-3078
Email: wcrand@wcrand.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
PARCREST INTERNATIONAL LLC, formerly known as :          ECF
PARCREST ADVISORS LLC and                                        :          22 Civ. _____
INDEPENDENT INVESTMENT BANKERS CORP.,             :
doing business as IIB CORP.,                                           :
                                                                                       :
                              Plaintiffs,                                      :
                                                                                       :          **COMPLAINT AND**
          -against-                                                           :          **JURY DEMAND**
                                                                                       :
REAL FOOD, SGPS, S.A.,                                              :
                                                                                       :
                              Defendant.                                    :
-----------------------------------------------------------------------X

# EXHIBIT B

# EMAIL TERMINATING THE
# ENGAGEMENT AGREEMENT

Dated: New York, New York
          October 3, 2022

                                   LAW OFFICE OF WILLIAM COUDERT RAND
                                   William Coudert Rand, Esq.
                                   *Attorney for Plaintiff*s
                                   501 Fifth Avenue 15th Floor
                                   New York, New York 10017
                                   Tel: (212) 286-1425
                                   Fax: (646) 688-3078
                                   Email: wcrand@wcrand.com

| | |
|---|---|
| **From:** | Marta Costa <Marta.Costa@h3.com> |
| **Sent:** | Thursday, February 13, 2020 1:36 PM |
| **To:** | Francisco Lume; 'James Lee' |
| **Cc:** | Antonio Cunha Araújo H3; Miguel Van Uden; Décio Falcão |
| **Subject:** | Termination of the Contract |
| **Attachments:** | EL PARCREST_signed.pdf |

**Importance:**          High

Dear Francisco,

We hereby denounce the attached Engagement Agreement signed with you on September 9, 2019, with effect at the end of these first 6 months, that is, the end of February 2020.

Best,
Marta

Melhores cumprimentos,

**Marta Costa**

h3™ new hamburgology®
Café 3™

Rua Tierno Galvan, nº 10, Torre 3
3º piso - 301 a 303
1070-274 Lisboa – PORTUGAL
...
T: + 351 21 380 31 10
M: + 351 96 554 24 35

marta.costa@h3.com

